8106
0395

| Instrument Control Number | | |
|---|---|---|
| | BK08106PG395 | 11489 |

## Commonwealth of Virginia
### Land Record Instruments
### Cover Sheet - Form A

[ILS VLR Cover Sheet Agent 1.0.65]

T A X   E X E M P T  ☐ ☒   C O R P  ☐ ☐

Date of Instrument: [4/23/2010]
Instrument Type: [DCOR]

Number of Parcels [ 1]
Number of Pages [ 19]

City [x] County ☐ [City Of Chesapeake]     (Box for Deed Stamp Only)

**First and Second Grantors**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [Norfolk and Portsmouth] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] |

**First and Second Grantees**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [Figg Bridge Developers,] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] |

Grantee Address  (Name)      [Figg Bridge Developers, L.L.C.
                 (Address 1)  [424 North Calhoun Street
                 (Address 2)  [
                 (City, State, Zip) [Tallahassee        ] [FL] [32301]

Consideration [0.00]  Existing Debt [0.00]  Assumption Balance [0.00]

Prior Instr. Recorded at: City ☐  County ☐ [   ]
Book [  ]  Page [   ]       Percent. in this Juris. [ 100]
Parcel Identification No (PIN)   [N/A]       Instr. No [   ]
Tax Map Num.  (if different than PIN) [N/A]
Short Property Description  [
                            [
Current Property Address (Address 1) [
                         (Address 2) [
                         (City, State, Zip) [          ] [  ] [     ]

Instrument Prepared by        [Crenshaw, Ware & Martin, PLC
Recording Paid for by         [Kaufman & Canoles, P.C.
Return Recording to  (Name)   [Jeffrey M. Stedfast, Esq.
                     (Address 1) [Kaufman & Canoles, P.C.
                     (Address 2) [P.O. Box 3037
                     (City, State, Zip) [Norfolk         ] [VA] [23514]
Customer Case ID  [135597      ] [      ]

2010 MAY -5 PM 12: 04
RECEIVED FOR RECORDING ONLY
CITY CIRCUIT COURT FAYE W MITCHELL CLERK

Cover Sheet Page # 1 of 1

**EXHIBIT A**

8106
0396

BK0 8 I 0 6 PG 3 9 6

Exemption Claimed: Section 58.1-810.2
PREPARED BY:

James L. Chapman, IV, Esquire
Crenshaw, Ware & Martin, P.L.C.
1200 Bank of America Center
Norfolk, VA 23510

RETURN TO:

Jeffrey M. Stedfast, Esquire
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510

TAX MAP NO.: __N/A__

## CORRECTED DEED OF EASEMENT

THIS CORRECTED DEED OF EASEMENT ("Deed") is made and entered into this 23rd day of April 2010 by and between **NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY**, a corporation organized and existing under the laws of the Commonwealth of Virginia, having its principal office in Portsmouth, Virginia ("Grantor"), indexed as Grantor, and **FIGG BRIDGE DEVELOPERS, L.L.C.**, a limited liability company organized and existing under the laws of the State of Florida with its principal office in Tallahassee, Florida ("Grantee"), indexed as Grantee.

### WITNESSETH THAT:

For and in consideration of the sum of ONE DOLLAR ($1.00) and other valuable consideration, paid by Grantee to Grantor, the receipt and sufficiency of which is hereby acknowledged, and subject to the reservations and conditions described below, Grantor grants unto Grantee and its successors and assigns an aerial easement (the "Aerial Easement") for the construction, operation, maintenance, repair, use and removal of one (1) overhead bridge and appurtenances thereto to accommodate vehicular and pedestrian traffic (the "Overhead Bridge") over and across land owned by Grantor and situated in the City of Chesapeake, Virginia, more particularly described and shown on Exhibit A attached hereto and made a part hereof, which Aerial Easement shall remain effective until such time as the Overhead Bridge is removed or is no longer used for the purposes described herein.

The envelope of the Aerial Easement shall be subject to minimum clearances as specified in this Deed and any applicable federal, state or local laws or regulations. Such Aerial Easement shall consist of and be limited to air space, in a generally rectangular shape, lying above Grantor's parcel, as described and shown on Exhibits B1 and B2 attached hereto and made a part hereof.

The Aerial Easement shall be further subject to such easements and restrictions as may appear of record or as may be apparent from an examination of the premises.

1


8106
0397

BK08106PG397

Grantor reserves unto its affiliates, subsidiaries, parent corporations, successors, assigns, licensees and lessees the right to continue to maintain, repair, renew and operate a railroad and appurtenances under and over the Aerial Easement and to construct such additional track(s) and other facilities under and over the area encumbered by the Aerial Easement (the "Easement Area") as in the judgment of Grantor, its affiliates, subsidiaries, parent corporations, successors, assigns, licensees or lessees may be required, provided that such use shall not prevent or unreasonably interfere with Grantee's Overhead Bridge.

Grantor further reserves unto its affiliates, subsidiaries, parent corporations, successors, assigns, licensees and lessees the right to install, construct, locate, maintain, repair and renew any fiber optic communications lines, cables, pipelines and other utilities and associated structures and facilities related thereto under or over the Easement Area and to maintain, renew and operate the same as in the judgment of Grantor, its affiliates, subsidiaries, parent corporations, successors, assigns, licensees or lessees may be required, provided that such use shall not prevent or unreasonably interfere with Grantee's Overhead Bridge.

The foregoing grant of the Aerial Easement is made upon and subject to the following terms and conditions, which are accepted by Grantee, for itself and for its successors and assigns, and which shall be covenants running with the Aerial Easement granted herein:

1. CONSTRUCTION.

    A. Grantee assumes the entire responsibility for construction of the Overhead Bridge within the Aerial Easement.

    B. Construction of the Overhead Bridge will be accomplished in accordance with and subject to the following:

        i. the plans and specifications prepared by Grantee and reviewed by Grantor and approved by the City of Chesapeake;

        ii. the Special Provisions for Protection of Railway Interests ("Special Provisions") attached hereto and made a part hereof as **Exhibit C**; and

        iii. the requirements of Grantor, or its duly authorized representatives, as to prevention of interference with, interruption of, danger or delay to railroad operations.

    C. No construction work shall commence on the Overhead Bridge until Grantor has been notified in writing by the Grantee of the date the contractor proposes to begin work and until the Grantee has been notified in writing by Grantor that the Grantee may cause such work to begin as set forth in the Special Provisions. Such work shall at all times be subject to inspection and approval of Grantor, which approval shall not be unreasonably withheld, and shall require the contractor to comply with the requirements of the Special Provisions.

2

8106
0398

BK08I06PG398

    D. Before commencing work on the Overhead Bridge, Grantee shall furnish to Grantor insurance certificates or other evidence acceptable to Grantor that the Liability and Property Damage Insurance in the amounts specified in the Special Provisions and in a form approved by Grantor has been obtained by Grantee or Grantee's contractor.

    2. MAINTENANCE. Grantee assumes responsibility for maintenance and use of the Overhead Bridge as located within the Easement Area. Such maintenance and use shall be performed and undertaken by Grantee in a manner consistent with the Special Provisions and all other applicable laws, regulations and railroad protocols. Grantee shall provide prior written notice to Grantor of any maintenance or use that may in any way impair railroad operations or pose any real or potential hazard to the passage of trains or other operations. Grantee shall pay Grantor all reasonable expenses for watchmen and flagging services which Grantor deems necessary as a result of any construction, operation, maintenance, repair, use or removal of the Overhead Bridge.

    3. STANDARD FOR CONSTRUCTION AND MAINTENANCE. Grantee shall exercise all reasonable care and take such reasonable precautions as Grantor, or its authorized representative, deems necessary to protect Grantor's facilities and operations.

    4. TITLE. Legal title and ownership of any removable structure erected by Grantee in the Easement Area shall remain with Grantee, its successors and/or assigns.

    5. INDEMNITY. To the full extent allowed under law, Grantee, its successors and assigns hereby agree to indemnify, defend and hold Grantor harmless from and against all liability, losses, damages, claims, actions, causes of action, costs and expenses, including attorneys' fees, for all injury to persons and/or property (including death), arising out of or resulting from, directly or indirectly, in whole or in part, the Overhead Bridge, including any construction, operation, maintenance, repair, use or removal thereof, and/or the presence of Grantee, its agents, servants, invitees, licensees, employees or any other persons on or about the Overhead Bridge, Easement Area or property of Grantor. Notwithstanding the foregoing, Grantee shall not indemnify Grantor against liability, losses, damages, claims, actions, causes of action, costs or expenses that result solely from Grantor's intentional or grossly negligent conduct authorized by its management.

    6. INSURANCE. In addition to any other forms of insurance or bonds required under the terms of any contract or specifications, Grantee will be required to carry insurance of the following kinds and amounts at all times during construction, operation, maintenance, repair, use and removal of the Overhead Bridge and at all other times during the duration of this easement:

    A. Commercial General Liability Insurance having a combined single limit of not less than $2,000,000 per occurrence and $6,000,000 in the aggregate for all loss, damage, cost and expense, including attorneys' fees, arising out of bodily injury liability and property damage liability (including death) during the policy period. Said policy shall include "explosion collapse and underground hazard" (XCU) coverage, shall be endorsed to name "Norfolk and Portsmouth Belt Line Railroad Company" as an additional insured, and shall include a severability of interests provision.

3

8106
0399

BK08106PG399

B. Evidence of such insurance coverage satisfactory to Grantor shall be submitted by Grantee to Grantor within thirty (30) days of the effective date of this Deed and on an annual basis every July 1 thereafter, or at such other time as requested in writing by Grantor.

C. Beginning ten (10) years after the effective date of this easement and each ten (10) year anniversary thereafter, at the written request of the Grantor, Grantees shall increase the coverage in an amount adjusted by the Consumer Price Index published by the Bureau of Labor Statistics for the period considered, or if such index is not available, such other comparable index.

7. COVENANTS OF GRANTOR. Grantor shall not conduct any blasting or substantial excavation operations that Grantee reasonably determines will compromise the structural integrity of the Overhead Bridge without sufficient protections for the structure.

8. REMEDIES. In the event of a breach or failure to comply with the provisions of this Deed by any party, or any successor or assign of any party, the aggrieved party shall be entitled to legal and equitable relief, as well as attorneys' fees, including specific performance of this Deed and preliminary and permanent injunctive relief without showing monetary damages and without the necessity of a bond or other security.

9. MISCELLANEOUS.

A. The parties agree that the terms and conditions of this Deed are for the sole benefit of Grantor and Grantee and their successors or assigns in connection with the Overhead Bridge.

B. Grantee, for itself and its successors and assigns, agrees that the terms and conditions of this Deed shall be covenants running with the land and air space described herein in perpetuity and all future owners of the property described herein shall be bound by said terms and conditions.

C. Grantor shall not be required to assume any expense in connection with or incident to any construction, operation, maintenance, repair, use or removal of any facilities located within the Easement Area and shall be exempt from all charges, costs or assessments of any kind on account of construction, operation, maintenance, repair, use or removal of the Overhead Bridge within the Easement Area or any property of Grantor. In the event Grantor is charged with any such expenses for any reason, Grantee agrees to pay such expenses in the place of Grantor.

D. Provided the same are not the result of acts of God, war, labor strikes, destruction or failure of the bridge, or other forces outside the control of Grantee, in the event Grantee fails to operate the Overhead Bridge for public passage for any period in excess of three (3) months, Grantor shall have the option of demanding that Grantee remedy such failure within a reasonable time not to exceed three (3) months. If such failure is not remedied, Grantee shall, at the request of Grantor and in accordance with the Special Provisions, remove all hazardous materials and all structures and improvements that Grantee constructed or placed, or caused to be constructed or placed, within the Easement Area at no expense to Grantor. The indemnity and insurance obligations of Paragraphs 5 and 6 above shall remain in effect during such removal.

4

8106
0400

BK08106PG400

E. Notwithstanding anything to the contrary herein, with advance notice to and written concurrence by Grantor, Grantee may close the Overhead Bridge for the express purpose of making improvements to the Overhead Bridge and its approaches. Such closure shall not constitute failure to operate the Overhead Bridge.

IN WITNESS WHEREOF, Grantor has caused this Deed to be signed by its President as of the day and year first written above.

NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY, Grantor

By: _____
David H. Stinson, President

COMMONWEALTH OF VIRGINIA
CITY OF NORFOLK, to-wit:

The foregoing was acknowledged before me this __27__ day of __April__ 2010 by DAVID H. STINSON, who is [ ✓ ] known to me or [ ] provided _____ as identification, and who affirmed that he or she is authorized to sign this document on behalf of NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY.

[SEAL]

_____ Notary Public

My Commission Expires: __May 31, 2013__

Notary Registration No.: __7257605__

RACHAEL AILEEN WEISS SEARS
Notary Public
Commonwealth of Virginia
Commission #7267605
My Commission Expires May 31, 2013

**Signatures continued on next page.**

5

8106
0401

BK08106PG401

FIGG BRIDGE DEVELOPERS, L.L.C, Grantee

By: *Linda Figg*
Linda Figg, Manager/President

STATE OF Florida

COUNTY OF Leon, to wit:

The foregoing was acknowledged before me this 3rd day of May 2010 by LINDA FIGG, who is [X] known to me or [ ] provided _____ as identification, and who affirmed that he or she is authorized to sign this document on behalf of FIGG BRIDGE DEVELOPERS, L.L.C.

[SEAL]

_____
Notary Public

My Commission Expires: 2-11-2013
Notary Registration No.: DD860683

Notary Public State of Florida
Ashley L Rathman
My Commission DD860683
Expires 02/11/2013

6

8106
0402

BK08106PG402  BK07932PG597

## EXHIBIT A

ALL THAT CERTAIN piece or parcel of land situated in the City of Chesapeake, State of Virginia, formerly known as the Washington Magisterial District of the County of Norfolk, bounded and described as follows:

BEGINNING at a point in the western line of Preble Street where the same is intersected by the southern line of a lane twenty-five (25) feet wide, extending westwardly from said street, which point of beginning is twenty-five (25) feet south of the prolongation of the southern side of Park Avenue, thence running South eighty-four degrees and eighteen minutes West (S. 84 18' W.) along the southern side of said lane thirty (30) feet; thence South five degrees and forty-two minutes East (S. 5 42' E.) one hundred eighty (180) feet; thence along a curved line with a radius of nine hundred forty and thirty-seven hundredths (940.37) feet, a distance of two hundred twenty-one and six-tenths (221.6) feet; thence westwardly five (5) feet; thence South seven degrees and forty-eight minutes West (S. 7 48' W.) three hundred forty-nine and nine-tenths (349.9) feet more or less to the middle of Scuffletown Creek; thence North seventy-three degrees and forty-eight minutes East (N. 73 48' E.) one hundred forty-eight (148) feet; thence North five degrees and forty-two minutes West (N. 5 42' W.) and along the western side of Preble Street seven hundred eleven (711) feet more or less to the point of beginning, containing by survey one and thirteen-hundredths (1.13) acres more or less together with a right of way over said twenty-five (25) foot lane in common with the coterminous owners, being part of the property conveyed to said W. W. Robertson by the Citizens Bank of Norfolk, Virginia, by deed dated March 21st, 1904, duly of record.