

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY**
1340 TRUXTON STREET
CHESAPEAKE, VIRGINIA
(757) 271-1800
(757) 271-1801 FAX

Cannon Moss
President & General Manager

June 22, 2012

**VIA FACSIMILE AND OVERNIGHT MAIL**

Ms. Linda Figg
Figg Bridge Developers, L.L.C.
424 North Calhoun Street
Tallahassee, Florida 32301

      Re:    Damage to Norfolk and Portsmouth Belt Line Railroad Company
              Property in Chesapeake, Virginia

Dear Ms. Figg:

      This is to address the failure of a portion of the new Jordan Bridge being constructed by Figg Bridge Developers, L.L.C. ("Figg") in Chesapeake, Virginia. Based on what we know so far, a segment of prefabricated concrete approximately 52 feet long and 10 feet wide fell onto the tracks and property of the Norfolk and Portsmouth Belt Line Railroad Company ("NPBL") yesterday at about 4:00 p.m. It remains there today.

      As you know, NPBL and Figg are parties to deed of easement for the new bridge. The easement contains language requiring indemnity for damage to NPBL property (Corrected Deed, para. 5) and additional language prohibiting interference with railroad operations (Corrected Deed, para. 3; Special Provisions, para. 4.A.). It also contains insurance requirements, including a CGL policy that names NPBL with XCU coverage for "explosion, collapse and underground hazard" (Corrected Deed, para. 6.A.).

      We are evaluating the quickest and most effective means to remedy the situation. At present, we have identified physical damages to the track, including the switch and scanner; damages to the track bed; and damages to the crossing, including gates, flashers and wiring. We are working to address other items of damage, including delay costs, loss of service, customer claims, and shipment alternatives. We may identify other issues and items of damages as we continue to evaluate the situation.

      Please contact me at your earliest opportunity today to discuss this matter and your remediation plans. Please also forward me copies of the appropriate insurance documents called for in the deed of easement. I can be reached directly at 757-271-1756.

EXHIBIT C

1

      The Belt Line reserves all rights under the deed of easement. I look forward to hearing from you.

                              Sincerely,

                              R. Cannon Moss
                              President & General Manager

cc:    James L. Chapman, IV, Esquire (facsimile only)
       W. Ryan Snow, Esquire (facsimile only)
       Jeffrey M. Stedfast, Esquire (facsimile only)

BK 8106 PG 405

8106
0405

BK 07932 PG 680

EXHIBIT
C

Special Provisions for
Protection of Railway Interests

1. **DEFINITIONS:**

   A. **Contractor:** any general contractor, subcontractor or other entity or individual performing work as prescribed herein.

   B. **Owner:** Figg Bridge Developers, L.L.C.

   C. **Owner Engineer:** authorized representative of Figg Bridge Engineers, Inc.

   D. **Prime Contractor:** any general contractor performing work as prescribed herein.

   E. **Railroad:** Norfolk and Portsmouth Belt Line Railroad Company.

   F. **Railroad Engineer:** the President of Norfolk and Portsmouth Belt Line Railroad Company or other authorized representative.

   G. **Railroad Property:** any property or right-of-way in which the Norfolk and Portsmouth Belt Line Railroad Company holds an interest as owner or otherwise.

   H. **Railroad Representative:** any authorized representative, other than the Railroad Engineer, of Norfolk and Portsmouth Belt Line Railroad Company designated to receive notification as prescribed in paragraph 3.B.

2. **AUTHORITY OF RAILROAD ENGINEER AND OWNER ENGINEER:**

   The Railroad Engineer shall have final authority in all matters affecting the safe maintenance of Railroad traffic including the adequacy of the foundations and structures supporting the Railroad tracks.

   The Owner Engineer shall have authority over all other matters as prescribed herein and in the Project Specifications.

3. **NOTICE OF STARTING WORK:**

   A. The Owner shall not commence any work on Railroad Property until the Owner has complied with the following conditions:

      1. Given the Railroad Engineer written notice, with copy to the Owner Engineer, at least ten days in advance of the date the Contractor proposes to begin work on Railroad Property. Notice to be given to:

         Office of the President
         Norfolk and Portsmouth Belt Line Railroad Company
         1050 Virginia Avenue
         P.O. Box 7547
         Portsmouth, VA 23707

1

8106
0406

BK 08106 PG 406  ~~07932PG601~~

2. Obtained written authorization from the Railroad Engineer to begin work on Railroad Property, such authorization to include an outline of any specific conditions with which the Contractor must comply in addition to these Special Provisions.

3. Provided Railroad Engineer written evidence satisfactory to the Railroad Engineer of Railroad Protective Insurance Liability coverage as required by paragraph 15 herein.

4. Furnished a schedule for all work on Railroad Property as required by paragraph 8.B.1.

B. The Railroad Engineer's written authorization to proceed with the work shall include the names, addresses, and telephone numbers of any Railroad Representatives who are to be notified as hereinafter required.

4. **INTERFERENCE WITH RAILROAD OPERATIONS**:

A. The Contractor shall so arrange and conduct the work so that there will be no interference with Railroad operations, including train, signal, telephone and telegraphic services, or damage to Railroad Property or to poles, wires and other facilities of tenants on Railroad Property. Whenever work is likely to affect the operations or safety of trains, the method of doing such work shall first be submitted to the Railroad Engineer for approval, but such approval shall not relieve the Contractor from liability. Any work to be performed by the Contractor that requires flagging or inspection service shall be deferred by the Contractor until the flagging or inspection service is available at the job site.

B. Whenever work on Railroad Property is of such a nature that impediment to Railroad operations is unavoidable, the Contractor shall schedule and conduct work so that such impediment is reduced to the absolute minimum.

C. Should conditions arising from, or in connection with, the work require that immediate provisions be made to protect Railroad Property and operations, the Contractor shall make such provisions. If in the judgment of the Railroad Engineer, or in the Railroad Engineer's absence, the Owner Engineer, such provisions are insufficient, the Railroad Engineer or Owner Engineer, as applicable, may require or provide other or additional provisions as deemed necessary. If feasible, in a non-emergency situation, the Railroad Engineer or Owner Engineer will provide Contractor with reasonable advance notice and an opportunity to provide necessary provisions to cure such conditions before making expenditures therefor. In any event, such provisions shall be at the Contractor's expense and without cost to the Railroad or the Owner.

5. **TRACK CLEARANCES**:

A. Minimum track clearances to be maintained by the Contractor must be shown on the project plans. Before undertaking any work on Railroad Property or placing any obstruction over any track, the Contractor shall:

1. Notify the Railroad Representative at least 72 hours in advance.

2

8106
0407

BK 08106 PG 407 ~~BK 07932 PG 602~~

2. Receive assurance from the Railroad Representative that arrangements have been made for flagging service as may be necessary.

3. Receive permission from the Railroad Representative to proceed with the work.

6. **CONSTRUCTION PROCEDURES:**

   A. <u>General</u>:

   Construction work and operations by the Contractor on Railroad Property shall be:

   1. Subject to the inspection and approval of the Railroad Engineer, but such inspection and approval shall not relieve the Contractor from liability.

   2. In accord with all of the Railroad's written specific conditions.

   3. In accord with these Special Provisions.

   4. In accord with the most recent version of the Norfolk Southern Operating Guidelines for Contractors ("NSOGC") and any applicable federal, state or local laws or regulations, provided that in the event the NSOGC conflicts with these Special Provisions, these Special Provisions will prevail.

   B. <u>Excavation</u>:

   There shall be no excavation work conducted on Railroad Property.

   C. <u>Demolition, Erection, Hoisting</u>

   1. The Railroad Representative must be present, and all Railroad Property, including, without limitation, railroad tracks, must be protected from damage, during all demolition, erection and/or hoisting procedures.

   2. The Contractor is to submit the following, prepared, signed and sealed by a Registered Professional Engineer, to the Railroad Engineer and the Owner Engineer:

      (a) A plan showing the location of cranes both horizontally and vertically, crane operating radii, and delivery and disposal locations with reference to the location of all tracks and other railroad facilities, wire lines, poles, adjacent structures, and other obstructions.

      (b) Crane rating sheets showing cranes to be adequate for 150% of the actual weight of the pick.

      (c) Data sheet listing the types, sizes, and arrangements of all rigging and connection equipment

3

8106
0408
BK08106PG408
BK07932PG603

    (d) A plan detailing the order of the lifts, time required for each lift, and any repositioning or rehitching of the cranes.

3. All items listed in paragraph D.2. must be approved by the Railroad Engineer and Owner Engineer before any demolition, erection and/or hoisting procedures may begin, but such approval does not relieve the Contractor from liability.

D. **Blasting**:

1. The Contractor shall obtain advance approval of the Railroad Engineer and the Owner Engineer for use of explosives on or adjacent to Railroad Property, but such approval shall not relieve the Contractor from liability. The request for permission to use explosives shall include a detailed blasting plan. If permission for use of explosives is granted, the Contractor will be required to comply with the following:

    (a) Blasting shall be done with light charges under the direct supervision of a responsible officer or employee of the Contractor and a licensed blaster.

    (b) Electric detonating fuses shall not be used because of the possibility of premature explosions resulting from operation of two-way radios.

    (c) No blasting shall be done without the presence of the Railroad Representative. At least 72 hours advance notice to Railroad Representative will be required to arrange for the presence of a Railroad Representative and such flagging as the Railroad may require.

    (d) The Contractor shall have at the job site adequate equipment, labor and materials and allow sufficient time to clean up debris resulting from the blasting without delay to trains, as well as correcting at Contractor's expense any track misalignment or other damage to Railroad Property resulting from the blasting. If Contractor's actions result in delay of trains, the Contractor shall bear the entire cost thereof.

2. The Railroad Representative will:

    (a) Advise the Contractor of the amount of track time available for the blasting operation and clean up.

    (b) Have the authority to order discontinuance of blasting if, in his or her opinion, blasting is too hazardous or is not in accord with these Special Provisions.

E. **Maintenance of Railroad Facilities**:

1. The Contractor will be required to maintain all ditches and drainage structures free of silt or other obstructions that may result from construction operations and provide and maintain any erosion control measures as required. The Contractor will promptly repair eroded areas on Railroad Property and repair any other damage to Railroad Property or the property of its tenants.

4

BK 08106 PG 409 ~~BK 07932 PG 604~~

8106
0409

  2.  All such maintenance and repair of damages due to the Contractor's operations shall be done at the Contractor's expense.

 F.  <u>Storage of Materials and Equipment</u>:

Materials and equipment shall not be stored where they will interfere with Railroad operations, nor on Railroad Property, without permission from the Railroad Engineer. The Railroad will not be liable for damage to such materials or equipment resulting from any cause. The Railroad Engineer may move or require the Contractor to move, at the Contractor's expense, such materials and equipment.

All grading or construction machinery that is left near the track unattended shall be effectively immobilized so that it cannot be moved by unauthorized persons. The Contractor shall protect, defend, indemnify and save Railroad, and any associated, controlled or affiliated corporation, harmless from and against all losses, costs, expenses, claims or liability for loss or damage to property or the loss of life or personal injury, arising out of or incident to the Contractor's failure to immobilize grading or construction machinery.

 G.  <u>Cleanup</u>:

Upon completion of the work, the Contractor shall remove from Railroad Property all machinery, equipment, surplus materials, falsework, rubbish or temporary buildings of the Contractor, and leave Railroad Property in a neat condition satisfactory to the Railroad Engineer.

7.  <u>**DAMAGES**</u>:

 A.  The Contractor shall assume all liability for any and all damages to his work, employees, personnel, workers, equipment and materials caused by Railroad traffic.

 B.  Any cost incurred by the Railroad for repairing damages to Railroad Property or to the property of its tenants, caused by or resulting from the operations of the Contractor, shall be paid directly to the Railroad by the Contractor.

8.  <u>**FLAGGING SERVICES**</u>:

 A.  When required:

The Railroad has sole authority to determine the need for flagging required to protect its operations. In general, the requirements of such services will be whenever the Contractor's personnel or equipment are, or are likely to be, working on Railroad Property or across, over, adjacent to, or under a track, or when such work has disturbed or is likely to disturb a railroad structure or the railroad roadbed or surface and alignment of any track to such extent that the movement of trains must be controlled by flagging.

 B.  Scheduling and Notification:

  1.  The Contractor's work requiring railroad flagging should be scheduled to limit the presence of a flagman at the site to a maximum of 50 hours per week. The

5

8106
0410
BK08106PG410 BK07932PG605

Contractor shall receive Railroad approval of work schedules requiring a flagman's presence in excess of 40 hours per week.

2. Not later than the time that approval is initially requested to begin work on Railroad Property, Contractor shall furnish to the Railroad Engineer and the Owner Engineer a schedule for all such work and arrange for a job site meeting between the Contractor, the Owner Engineer, and the Railroad Engineer. Flagmen may not be provided until the job site meeting has been conducted and the Contractor's work has been scheduled.

3. The Contractor will be required to give the Railroad Engineer at least ten working days advance written notice of intent to begin work on Railroad Property in accordance paragraph 3.A.1. Once begun, if such work is then suspended at any time, or for any reason, the Contractor will be required to give the Railroad Engineer at least three working days advance notice before resuming work on Railroad Property. Such notices shall include sufficient details of the proposed work to enable the Railroad Engineer to determine if flagging will be required. Such notice shall be in writing, with a copy to the Owner Engineer.

4. If flagging is required, no work shall be undertaken until the flagman, or flagmen are present at the job site. It may take up to 30 days to obtain flagging initially from the Railroad. When flagging begins, the flagman is usually assigned by the Railroad to work at the project site on a continual basis until no longer needed and cannot be called for on a spot basis. If flagging becomes unnecessary and is suspended, it may take up to 30 days to again obtain flagging from the Railroad. Due to Railroad labor agreements, it is necessary to give 5 working days notice before flagging service may be discontinued and responsibility for payment stopped.

5. If, after the flagman is assigned to the project site, an emergency arises that requires the flagman's presence elsewhere, the Contractor shall delay work on Railroad Property until such time as the flagman is again available. Any additional costs resulting from such delay shall be borne by the Contractor and not the Owner or Railroad.

C. Payment:

1. The Owner will pay the Railroad directly for any and all costs of flagging.

2. Work by a flagman in excess of 8 hours per day or 40 hours per week, but not more than 12 hours a day will result in overtime pay at 1 ½ times the appropriate rate. Work by a flagman in excess of 12 hours per day will result in overtime at 2 times the appropriate rate. If work is performed on a holiday, the flagging rate is 2 ½ times the normal rate.

3. Railroad work involved in preparing and handling bills will also be charged to the Owner. Flagging costs are subject to change.

6

8106
0411

BK08106PG411 BK07932PG606

D. Verification:

1. The flagman assigned to the project will notify or make an attempt to notify the Owner Engineer upon arrival at the job site on the first day (or as soon thereafter as possible) when flagging services begin and on the last day that he performs such services for each separate period that services are provided. The Owner Engineer will document such notification in the project records. The Owner Engineer will also sign the flagman's diary showing daily time spent and activity at the project site, when requested.

9. **HAUL ACROSS RAILROAD:**

A. Where the plans show or imply that materials of any nature must be hauled across Railroad Property, unless the plans clearly show that the Owner has included arrangements for such haul in its agreement with the Railroad, the Contractor will be required to make all necessary arrangements with the Railroad regarding means of transporting such materials across Railroad Property. The Contractor will be required to bear all costs incidental to such crossings whether services are performed by the Contractor's own forces or by Railroad personnel.

B. No crossing, including those arranged for by the Owner, may be established for use of the Contractor for transporting materials or equipment across the tracks of the Railroad unless specific authority for its installation, maintenance, necessary watching and flagging thereof and removal has been obtained, and until a private crossing agreement has been executed between the Contractor and Railroad.

10. **WORK FOR THE BENEFIT OF THE CONTRACTOR:**

A. All temporary or permanent changes in wire lines or other facilities which are considered necessary to the project must be shown on the plans, or covered by appropriate revisions which will be initialed and approved by the Owner and the Railroad.

B. Should the Contractor desire any changes in addition to the above, then the Contractor shall make separate arrangements with the Railroad for same to be accomplished at the Contractor's expense.

11. **COOPERATION AND DELAYS:**

A. It shall be the Contractor's responsibility to arrange a schedule with the Railroad for accomplishing stage construction involving work by the Railroad or tenants of the Railroad. In arranging the schedule the Contractor shall ascertain, from the Railroad, the lead time required for assembling crews and materials and shall make due allowance therefor.

B. No charge or claim of the Contractor against either the Owner or the Railroad will be allowed for hindrance or delay on account of railway traffic, work done by the Railroad, or other delay incident to or necessary for safe maintenance of railway traffic or for any delays due to compliance with these special provisions.

7

BK 0 8 1 0 6 PG 4 1 2 ~~BK 0 7 9 3 2 PG 6 0 7~~

8106
0412

12. **TRAINMAN'S WALKWAYS:**

Along the outerside of each exterior track of multiple operated track, and on each side of single operated track, an unobstructed continuous space suitable for trainman's use in walking along trains, extending to a line not less than 10 feet from centerline of track, shall be maintained. Any temporary impediments to walkways and track drainage encroachment or obstructions allowed during work hours while Railroad's protective service is provided shall be removed before the close of each work day. If there is any excavation near the walkway, a handrail shall be placed with 10-foot minimum clearance from the centerline of the track.

13. **GUIDELINES FOR PERSONNEL ON RAILROAD PROPERTY:**

   A. All persons shall wear hard hats. Appropriate eye and hearing protection must be used. Working in shorts is prohibited. Shirts must cover shoulders, back and abdomen. Working in tennis or jogging shoes, sandals, boots with high heels, cowboy and other slip-on type boots is prohibited. Hard-sole, lace-up footwear, zippered boots or boots cinched up with straps which fit snugly about the ankle are adequate. Safety boots are strongly recommended.

   B. No one is allowed within 25 feet of the centerline of track without specific authorization from the flagman.

   C. All persons working near track while train is passing are to lookout for dragging bands, chains and protruding or shifted cargo.

   D. No one is allowed to cross tracks without specific authorization from the flagman.

   E. All welders and cutting torches working within 25 feet of track must stop when train is passing.

   F. No steel tape or chain will be allowed to cross or touch rails without permission.

14. **GUIDELINES EQUIPMENT ON RAILROAD PROPERTY:**

   A. No crane or boom equipment will be allowed to be set up to work or park within boom distance plus 15 feet of centerline of track without specific permission from the Railroad Representative and flagman.

   B. No crane or boom equipment will be allowed to foul track or lift a load over the track without flag protection and track time.

   C. All crane and boom operators will stay with their machines when their crane or boom equipment is pointed toward the track.

   D. All cranes and boom equipment under load will stop work while train is passing (including pile driving).

   E. Swinging loads must be secured to prevent movement while train is passing.

   F. No loads will be suspended above a moving train.

8

8106
0413

BK08106PG413 BK07932PG608

G. No equipment will be allowed within 25 feet of centerline of track without specific authorization of the flagman.

H. Trucks, tractors or any equipment will not touch ballast line without specific permission from railroad official and flagman.

I. No equipment or load movement within 25 feet or above a standing train or railroad equipment without specific authorization of the flagman.

J. All operating equipment within 25 feet of track must halt operations when a train is passing. All other operating equipment may be halted by the flagman if the flagman views the operation to be dangerous to the passing train.

K. All equipment, loads and cables are prohibited from touching rails.

L. While clearing and grubbing, no vegetation will be removed from railroad embankment with heavy equipment without specific permission from the Railroad Engineer and flagman.

M. No equipment or materials will be parked or stored on Railroad Property unless specific authorization is granted from the Railroad Engineer.

N. All unattended equipment that is left parked on Railroad Property shall be effectively immobilized so that it cannot be moved by unauthorized persons.

O. All cranes and boom equipment will be turned away from track after each work day or whenever unattended by an operator.

15. **INSURANCE**:

A. In addition to any other forms of insurance or bonds required under the terms of any contract or specifications, the Prime Contractor will be required to carry insurance of the following kinds and amounts:

1. Commercial General Liability Insurance having a combined single limit of not less than $2,000,000 per occurrence an $6,000,000 in the aggregate for all loss, damage, cost and expense, including attorneys' fees, arising out of bodily injury liability and property damage liability (including death) during the policy period. Said policy shall include "explosion, collapse, and underground hazard" (XCU) coverage, shall be endorsed to name "Norfolk and Portsmouth Belt Line Railroad Company" as an additional insured and shall include a severability of interests provision.

2. The job location must appear on the Declarations and must include the city, state and appropriate highway name/number. The name and address of the Prime Contractor must appear on the Declarations. The name and address of the Owner must be identified on the Declarations as the "Other Contracting Party."

B. If any part of the work is sublet, similar insurance and evidence thereof as specified in paragraph 15.A.1, shall be provided by or on behalf of the Contractor to cover its operations on Railroad Property.

9

8106
0414

BK08106PG414 ~~07932PG609~~

C. Prior to entry on Railroad Property, the original Commercial General Liability Insurance Policy shall be submitted by the Prime Contractor to the Owner for its review and transmittal to the Railroad. The certificates of insurance shall state that the insurance coverage will not be suspended, voided, canceled, or reduced in coverage or limits without thirty (30) days advance written notice to the Railroad and Owner. No work will be permitted on Railroad Property until the Railroad has reviewed and approved the evidence of insurance as required herein.

16. **FAILURE TO COMPLY:**

In the event Contractor violates or fails to comply with any of the requirements of these Special Provisions:

A. The Railroad Engineer may require that the Contractor vacate Railroad Property.

B. The Owner Engineer may withhold all monies due the Contractor on monthly statements. Any such orders shall remain in effect until the Contractor has remedied the situation to the satisfaction of the Railroad Engineer and the Owner Engineer.

17. **PAYMENT FOR COST OF COMPLIANCE:**

No separate payment will be made for any extra cost incurred on account of compliance with these special provisions. All such costs shall be included in prices bid for other items of the work as specified in the payment items.

~~INSTRUMENT #090771274
RECORDED IN THE CLERK'S OFFICE OF
CHESAPEAKE ON
SEPTEMBER 15, 2009 AT 09:45AM

FAYE W. MITCHELL, CLERK
RECORDED BY: SWM~~

INSTRUMENT #100011489
RECORDED IN THE CLERK'S OFFICE OF
CHESAPEAKE ON
MAY 5, 2010 AT 02:49PM

FAYE W. MITCHELL, CLERK
RECORDED BY: SWM

10